**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**ROLLAND W.,**

                         **Plaintiff,**                  **21-CV-6504Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                         **Defendant.**

_____


## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #10


## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on October 8, 2019, at the age of 38, alleging disability beginning September 10, 2016, due to depression, anxiety and panic disorder. Dkt. #5, p.72.

On November 19, 2020, plaintiff appeared with counsel, along with vocational expert, Esperanza Distefano ("VE"), and testified at an administrative hearing conducted remotely before Administrative Law Judge ("ALJ"), David Neumann. Dkt. #5, pp.33-70. Plaintiff resides with his wife and three children, ages 5, 13 and 17. Dkt. #5, p.46. He

suffers from stress, anxiety and depression and began experiencing anxiety attacks, which he described as causing shortness of breath, dizziness, and a racing heartbeat, two-three times per week. Dkt. #5, pp.57-58. Plaintiff has difficulty leaving the house and becomes panicky and dizzy. Dkt. #5, p.53. As a result, his wife usually drives. Dkt. #4, pp.53 & 60-61. He will occasionally go to the gas station, but his wife does all the shopping. Dkt. #5, p.59. He was attending individual therapy sessions by video approximately every three weeks. Dkt. #5, pp.55-56.

Plaintiff is a high school graduate Dkt. #5, pp.46. He worked as a pressman, which he described as a physical job which required him to be on his feet and lift 20-50 pounds. Dkt. #5, pp.61-62. As he began to experience anxiety attacks, he testified that he just didn't have the energy to do his job and couldn't keep up with his work on the printing press. Dkt. #5, pp.48-50. More specifically, he testified that his anxiety caused him to make a lot of mistakes on the printing press, explaining that his mind is rushed all the time and he is unable to focus and complete tasks. Dkt. #5, pp.50-51. He testified that he was missing work because of his anxiety attacks and was embarrassed that he was letting his crew down. Dkt. #5, p.53.

The VE classified plaintiff's past work as a second pressman as a medium exertion, skilled position. Dkt. #5, p.65. When asked to assume an individual with plaintiff's age, education and past work experience who was limited to only occasional interaction with the public, the VE testified that such an individual could work as a second pressman, and could also work as a photocopying machine operator, marker, and router, each of

which were unskilled, light exertion positions. Dkt. #5, pp.67-68. The VE further advised

that employees would typically tolerate no more than one unexcused absence per month

and no more than 20% time off-task during the course of a work day. Dkt. #5, pp.68-69.

The ALJ rendered a decision that plaintiff was not disabled on December 3,

2020. Dkt. #5, pp.19-28. The Appeals Council denied review on June 2, 2021. Dkt. #5, p.5.

Plaintiff commenced this action seeking review of the Commissioner's final decision on

July 28, 2021. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining

whether the SSA's conclusions were supported by substantial evidence in the record and

were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501

(2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the

Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d

Cir. 2014). "Where an administrative decision rests on adequate findings sustained by

evidence having rational probative force, the court should not substitute its judgment for

that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish

an inability to do any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a).

The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 10, 2016; (2) plaintiff's anxiety disorder and

depressive disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform a full range of work at all exertional levels with a nonexertional limitation of no more than occasional interaction with the public; and (5) plaintiff was capable of performing his past relevant work as a second pressman, which was a medium exertion, skilled position, and was also capable of working as a marker, router, and photocopy machine operator, each of which were unskilled, light exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #5, pp.19-28.

Plaintiff argues that the ALJ's determination is not supported by substantial evidence because the ALJ relied upon his own lay interpretation of plaintiff's mental health treatment records to find plaintiff more limited than the consultative examination opinion that the ALJ deemed persuasive. Dkt. #7-1, pp.11-13. More specifically, plaintiff argues that his treatment records do not provide sufficient detail for the ALJ to evaluate plaintiff's mental RFC absent reliance upon opinion evidence.. Dkt. #7-1, pp.13-17. Moreover, plaintiff argues that the treatment records suggest far more significant limitations than the ALJ incorporated into his RFC and that the ALJ cherry-picked from the treatment records to misrepresent his ability to function. Dkt. #7-1, pp.17-20.

The Commissioner argues that the ALJ's RFC is supported by substantial evidence, including the opinion upon consultative examination. Dkt. #8-1, pp.10-12. The Commissioner responds that it is not error to impose greater functional limitations than suggested by the consultative examination. Dkt. #8-1, pp.11-12.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec'y*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021), *citing* 20 C.F.R. § 404.1520c(a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 404.1520c(b)(2) & (c).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec'y*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022).

-6-

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec'y*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

In the instant case, the ALJ found the opinion of the consultative examiner, Christine Ransom, Ph.D., to be mostly persuasive. Dkt. #5, p.26. Dr. Ransom conducted a psychiatric evaluation of plaintiff on December 30, 2019. Dkt. #5, p.522. Plaintiff advised Dr. Ransom that he received medication, therapy and group therapy as treatment for depression and anxiety for approximately three months during the Summer of 2019 and stopped treatment when his symptoms improved. Dkt. #5, p.522. He reported that he did not feel that he needed any additional treatment for depression or anxiety at the time of his evaluation and "denied signs and symptoms of clinical level of depression, anxiety, panic attacks, manic symptomatology, thought disorder and cognitive symptoms and deficits, suicidal and homicidal ideation, phobic responses and trauma responses. Dkt. #5, p.523. His mental status examination revealed, *inter alia*, a cooperative, socially appropriate individual with a neutral mood, adequate expressive and receptive skills, coherent, goal-directed thought processes, and good insight and judgment. Dkt. #5, pp.524-525. His cognitive functioning appeared to be average, with intact attention and concentration and recent and remote memory. Dkt. #5, p.524. Dr. Ransom opined that plaintiff did not suffer from an impairment at this time and would exhibit no evidence of limitation to understand,

remember or apply simple and complex directions and instructions using reasoning and judgment to make work-related decisions; interact adequately with supervisors, co-workers and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; regulate emotions; control behavior and maintain well being; maintain personal hygiene and appropriate attire; and demonstrate awareness of hazards and precautions. Dkt. #5, pp.524-525.

Dr. Ransom's opinion is supported by plaintiff's mental health treatment records, which reveal that plaintiff was referred to treatment by his primary care provider, Genevieve Johnson Stuber, DO, in July of 2018, due to excessive worry, rumination, panic attacks, irritability, depressed mood and decreased interest and enjoyment. Dkt. #5, p.337. Plaintiff was diagnosed with anxiety with depression and panic disorder without agoraphobia. Dkt. #5, p.337. He was prescribed medication and received individual and group therapy. Dkt. #5, p.337. Plaintiff responded well to cognitive behavioral therapy and was able to reduce his experience of anxiety. Dkt. #5, p.337. Plaintiff was discharged from mental health treatment on August 28, 2019 after discontinuing medication and reporting that was using learned skills to manage stressors and was doing well. Dkt. #5, p.338. In a note dated October 27, 2019, plaintiff reported that he was treating his symptoms without medication through exercise and meditation. Dkt. #5, p.286. On January 13, 2020, plaintiff reported to his primary care provider that he has been using coping skills for his mood and overall was doing much better. Dkt. #5, p.615. He had not used his anti-anxiety medication since November and did not feel as though he needed a daily depression medication. Dkt. #5, p.615. On March 11, 2020, a state agency review determined that plaintiff psychiatric

impairment was non-severe. Dkt. #5, p.90. While plaintiff returned to mental health treatment to address ongoing symptoms of panic and anxiety on September 18, 2020, he declined medication management, preferring to engage in talk therapy to receive support and learn new coping skills for symptom management. Dkt. #5, p.716. Plaintiff was observed to be alert and cooperative, with sustained attention, normal speech with full range of affect, and normal volume and rate of speech. Dkt. #5, p.717.

A month before returning to mental health treatment, plaintiff reiterated to his primary care provider that "his anxiety has been doing reasonably well" and he had not needed anti-anxiety medication since November. Dkt. #5, p.725. He did, however, report experiencing anxiety attacks if he left the house without his wife and requested a letter supporting his inability to work. Dkt. #5, p.725. Although recognizing that his symptoms were significantly improved, Dr. Stuber indicated in treatment notes dated August 19, 2020 that she agreed to plaintiff's request because he "has been struggling with severe anxiety for the entire time that I have worked with him" and [h]is statement that he struggles to leave the house is very believable." Dkt. #5, pp.725-726. Dr. Stuber opined that plaintiff "has little or no ability to engage in gainful employment due to severe persistent anxiety with agoraphobia," explaining that plaintiff "has shown signs of severe anxiety" for over three years and is "now exhibiting panic attacks when he leaves the house." Dkt. #5, p.712.

The ALJ determined that Dr. Stuber's opinion was not persuasive because it was not supported by the evidence of record, including plaintiff's reports of activities of daily living. Dkt. #5, p.26. This assessment is supported by substantial evidence. For

example, plaintiff reported to Dr. Ransom that he spends a lot of time with immediate family, sees family locally occasionally, likes to take walks outside, and can drive a car and go shopping. Dkt. #5, p.524. Furthermore, plaintiff indicated in his function report that even though he has a hard time in public places with too many people and does not like to be around strangers, he goes shopping and to the park, playground and pier with his family several times per week. Dkt. #5, p.232, 233 & 238. Moreover, medical source statements opining that an individual is unable to work are neither valuable nor persuasive. *See* 20 C.F.R. § 404.1520b(c)(3).

Furthermore, the ALJ's decision to credit plaintiff's reports of persistent mental health symptoms and impose a more restrictive mental RFC than set forth in the opinion of Dr. Ransom or the state agency review consultant is well within the ALJ's discretion. *See Jessica Lynn J. v. Comm'r of Soc. Sec'y,* __ F. Supp.3d __ 2022 WL 17494109, at *5 (W.D.N.Y. Dec. 8, 2022) ("ALJ does not commit reversible error where he give a claimant the benefit of the doubt and assesses limitations more severe than those supported by the medical evidence of record based on the claimant's subjective complaints."); *Lesanti v. Comm'r of Soc. Sec'y,* 436 F. Supp.3d 639, 649 (W.D.N.Y. 2020) (while no medical opinion indicated that plaintiff would be off task for any percentage of the workday, it was not error for the ALJ to impose such limitation in response to plaintiff's testimony); *See also Melissa D. v. Comm'r of Soc. Sec'y,* 21-CV-652, 2023 WL 2364814, at *4 (W.D.N.Y. Mar. 6, 2023) ("ALJ permissibly partially credited Plaintiff's subjective complaints and accordingly included in the RFC finding a limitation . . . that was not identified by the medical opinions of record."); *Lynessa M. v. Comm'r of Soc. Sec'y*, 20-CV-971, 2021 WL 4437184, at *5

(W.D.N.Y. Sept. 28, 2021) (ALJ did not commit reversible error by exercising discretion to limit plaintiff to occasional to no interaction with the public based upon her testimony regarding difficulties interacting socially in a work environment even though medical evidence of record supported the conclusion that plaintiff had no more than a moderate limitation in her ability to interact with others).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #8), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:   Buffalo, New York**
**September 26, 2023**

  **s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**